# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **EMMA ANN FASSE,** ) | |
| ) | |
| **Plaintiff,** ) | **CIVIL ACTION** |
| ) | |
| **v.** ) | **No. 14-2181-JWL** |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Supplemental Security Income (SSI) benefits under sections 1602 and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 1381a, and 1382c(a)(3)(A) (hereinafter the Act).  Finding no error in the Commissioner's decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

## I.    Background

Plaintiff applied for SSI benefits on November 5, 2010, alleging disability beginning January 1, 2002.  (R. 73, 257-60).  Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. Plaintiff claims that the Administrative Law Judge (ALJ) erred in failing to identify the

bases for his "Paragraph B" and "Paragraph C" findings at step three in the sequential evaluation process; erred in his credibility determination; and erred in evaluating the medical opinions of Dr. Morales, Plaintiff's treating psychiatrist, and Dr. Sheehan, a psychologist who examined Plaintiff and prepared a report of that examination after the ALJ issued his decision in this case.  Plaintiff also claims that as a result of the alleged errors in evaluating Dr. Morales's and Dr. Sheehan's opinions, the ALJ's residual functional capacity (RFC) assessment is erroneous.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the

determination whether substantial evidence supports the Commissioner's decision is not

simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v.

Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

    The Commissioner uses the familiar five-step sequential process to evaluate a

claim for disability.  20 C.F.R. § 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th

Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a

determination can be made at any of the steps that a claimant is or is not disabled,

evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting

Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether

claimant has engaged in substantial gainful activity since the alleged onset, whether she

has a severe impairment(s), and whether the severity of her impairment(s) meets or equals

the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt.

P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner

assesses claimant's RFC.  20 C.F.R. § 416.920(e).  This assessment is used at both step

four and step five of the sequential evaluation process.  Id.

    The Commissioner next evaluates steps four and five of the sequential process--

determining at step four whether, in light of the RFC assessed, claimant can perform her

past relevant work, if any; and at step five whether, when also considering the vocational

factors of age, education, and work experience, claimant is able to perform other work in

the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one

through four the burden is on Plaintiff to prove a disability that prevents performance of

past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord,

Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.

At step five, the burden shifts to the Commissioner to show that there are jobs in the

economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084,

1088 (10th Cir. 1999).

        The court finds no error, and orders that judgment shall be entered in accordance

with the fourth sentence of 42 U.S.C. § 405(g) affirming the Commissioner's decision.

The court first addresses issues regarding whether Dr. Sheehan's report should be

considered by this court in its review of the Commissioner's final decision.  It determines

that Dr. Sheehan's report may not be considered in this case, and then considers the other

errors alleged in Plaintiff's Brief.

## II.    Evidence Submitted for the First Time to the Appeals Council

        On October 30, 2012, the ALJ issued his decision in this case.  Thereafter, Dr.

Sheehan examined Plaintiff on August 12, 2013, and prepared a report of that

examination dated September 2, 2013.  (R. 28-43).  On September 3, 2013, Dr. Sheehan

completed a Psychiatric Review Technique form (PRTF)[1] and a Mental Residual

---

        [1]The PRTF has a handwritten date.  (R. 44).  The month in that date could be
viewed as a "9" written over by an "8," or vise-versa.  Id.  In her "Supplemental
Statement of Psychological Evaluation," Dr. Sheehan states that the PRTF was dated
August 3, 2013.  (R. 11).  However, Dr. Sheehan did not evaluate Plaintiff until August

Functional Capacity Assessment (Mental RFC) form regarding Plaintiff's mental

impairments and mental abilities.  (R. 44-58).  On November 2, 2013, Plaintiff's attorney

prepared a cover letter and faxed that letter along with Dr. Sheehan's report, opinion

forms, and curriculum vita[2] to the Appeals Council.  (R. 26-62).  Counsel prepared a brief

for the Appeals Council dated November 19, 2013 (R. 9-10), Dr. Sheehan prepared a

"Supplemental Statement of Psychological Evaluation" dated November 25, 2013 (R. 11),

and on December 13, 2013 those documents along with a portion of Dr. Sheehan's report,

opinion forms, and curriculum vita were faxed to the Appeals Council.  (R. 7-25).

On February 27, 2014, the Appeals Council denied Plaintiff's request for review of

the ALJ's decision.  (R. 1-6).  In its notice of that denial, the Appeals Council stated that

it had "considered the reasons [Plaintiff] disagree[s] with the [ALJ's] decision and the

additional evidence listed on the enclosed Order of Appeals Council."  (R. 1).  The Order

of Appeals Council enclosed in the notice of the Appeals Council's denial, shows only

"Exhibit 10E Representative's contentions dated November 2, 2013 and November 19,

2013" as the additional evidence received and which the Council was "making part of the

record."  (R. 6).  Exhibit 10E is the last exhibit in the "E" portion of the administrative

record, and consists of counsel's cover letter dated November 2, 2013, and her brief dated

_____

12, 2013 (R. 11, 28), and Dr. Sheehan's PRTF refers to Dr. Sheehan's "report of
September 2, 2013."  (R. 47, 49, 51).  Therefore, the court finds that Dr. Sheehan's PRTF
was prepared, at the earliest, on September 3, 2013.

[2]The usual usage is "curriculum vitae."  Webster's Third New International
Dictionary 557 (1986).  Nonetheless, the court uses "curriculum vita" as did Dr. Sheehan.

November 19, 2013 which were faxed to the Appeals Council on November 2, 2013 and

December 13, 2013, respectively.  (R. 330-33).  That exhibit does not contain any portion

of the report, opinion forms, or curriculum vita from Dr. Sheehan.

The Appeals Council also acknowledged the records received from Dr. Sheehan,

and explained how it had handled those records:

> We looked at the reports from Sheehan Psychological Services.  The
> Administrative Law Judge decided your case through October 30, 2012.
> This new information is about a later time.  Therefore, it does not affect the
> decision about whether you were disabled beginning on or before October
> 30, 2012.
>
> If you want us to consider whether you were disabled after October 30,
> 2012, you need to apply again.  The new information you submitted is
> available in your electronic file for you to use in your new claim.  If you
> need a paper copy of this evidence, you should:
>
> - • Contact us at the address noted at the top of this letter; or
> - • Contact your local field office at the address noted at the
>   bottom of this letter when you file a new claim.
>
> If you file a new claim for supplemental security income within 60 days
> after you receive this letter, we can use December 17, 2012, the date of your
> request for review, as the date of your new claim.  The date you file a claim
> can make a difference in the amount of benefits we can pay.

(R. 2).

Upon reviewing the record evidence and Plaintiff's briefs, this court recognized

that the Appeals Council's notice might be understood to require that Dr. Sheehan's

records are not a part of the administrative record in this case, and it also recognized that

Plaintiff's Brief was relying on Dr. Sheehan's records to establish error in the

Commissioner's final decision.  Therefore, the court ordered supplemental briefing on

"the issue of whether Dr. Sheehan's report is qualifying evidence which should be considered by the court in its review of the decision below."  (Doc. 22 p.5).

On June 2, 2015, the Commissioner filed her supplemental brief in which she argues that Dr. Sheehan's report is not a part of the record on review, and that "[e]ven if Dr. Sheehan's report is considered part of the record, . . . it would not warrant remanding the case."  (Doc. 23 p.1) (hereinafter Comm'r Supp.).  In her supplemental brief, Plaintiff argues "that Dr. Sheehan's report is part of the administrative record; is subject to this Court's [sic] de novo review; and is qualifying evidence."  (Doc. 24 p.1) (hereinafter Pl. Supp.).  As a preliminary matter, the court finds that the Appeals Council determined that Dr. Sheehan's records are not qualifying evidence and, therefore, did not include them in the administrative record for the court's consideration in judicial review.

### A.       Dr. Sheehan's Report Was Not Included in the Administrative Record

Since at least February 9, 1987, the regulations have provided that:  "If new and material evidence is submitted [after the ALJ decision], the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision."  20 C.F.R. § 416.1470(b) (45 Fed. Reg. 52,096 August 5, 1980; as amended at 52 Fed. Reg. 4,004 February 9, 1987).   The regulations also explain how the Council will handle such new and material evidence:

> In reviewing decisions based on an application for benefits, the Appeals
> Council will consider . . . any new and material evidence only if it relates to
> the period on or before the date of the administrative law judge hearing
> decision.  If you submit evidence which does not relate to the period on or
> before the date of the administrative law judge hearing decision, the

> Appeals Council will return the additional evidence to you with an
> explanation as to why it did not accept the additional evidence and will
> advise you of your right to file a new application.  The notice returning the
> evidence to you will also advise you that if you file an application within 60
> days after the date of the Appeals Council's notice, your request for review
> will constitute a written statement indicating an intent to claim benefits in
> accordance with § 416.340.  If a new application is filed within 60 days of
> this notice, the date of the request for review will be used as the filing date
> for your application.

Id. 416.1476(b) (45 Fed. Reg. 52,096 August 5, 1980; as amended at 52 Fed. Reg. 4,004

February 9, 1987).

After 1987, the Social Security Administration, like the United States Courts,

implemented an electronic filing system wherein the administrative record has become an

electronic record, and all documents submitted are scanned into the electronic file.

Therefore, the mere fact that additional evidence presented to the Appeals Council must

be scanned into the electronic file does not indicate that the additional evidence has been

made a part of the administrative record.  As always, the Appeals Council must issue an

order making the evidence a part of the administrative record.  As noted above, counsel's

letter and brief were made a part of the administrative record in this case, but Dr.

Sheehan's report was not.

As Plaintiff's supplemental brief suggests, the Social Security Administration's

Hearings, Appeals, and Litigation Law Manual (HALLEX) explains how the agency

administratively handles such a situation.  Available online at,

http://www.socialsecurity.gov/OP_Home/hallex/hallex.html.  Plaintiff cited HALLEX

§ I-3-3-6 for the proposition that additional evidence will be considered by the Appeals

8

Council if it is "new," that is, if it was not part of the record as of the date of the ALJ's decision; if it is "relevant," that is, if it involves or is directly related to issues adjudicated by the ALJ; and if it "[r]elates to the period on or before the ALJ decision," that is, if it is dated before the ALJ decision or reasonably relates to the time period adjudicated by the ALJ.  (Pl. Supp. 5) (citing HALLEX I-3-3-6 (Dec. 27, 2012), <u>available online at</u> http://www.socialsecurity.gov/OP_Home/hallex/I-03/I-3-3-6.html).  HALLEX § I-3-5-20 Consideration of Additional Evidence, explains how additional evidence is handled by the Appeals Council after it determines whether the evidence is new and material, and relates to the period at issue.  <u>Available online at</u>, http://www.socialsecurity.gov/OP_Home/hallex/I-03/I-3-5-20.html.  The HALLEX provides that if the evidence is not new, material, or related to the period at issue, the Appeals Council will "[n]ot exhibit the evidence."  <u>Id.</u> HALLEX I-3-5-20 (A)(2).  If however, the evidence is new and material, and relates to the period at issue, the Appeals Council will "[e]xhibit the evidence and prepare an exhibit list with the accompanying order."  <u>Id.</u> HALLEX I-3-5-20 (B).

This case provides an example of each determination contemplated by HALLEX I-3-5-20.  Here, the Appeals Council determined that the cover letter and the brief prepared by Plaintiff's counsel were new and material, and related to the period before the ALJ decision, exhibited them as Exhibit 10E, and prepared an order making that exhibit a part of the administrative record in this case.  (R. 6, 330-33).  On the other hand, the Council determined that Dr. Sheehan's records were not related to the period at issue, explained as

much in the Appeals Council's notice, did not prepare an order making that evidence a part of the administrative record, and did not exhibit the evidence.  (R. 2).  Therefore, the court finds that the Appeals Council did not make Dr. Sheehan's report a part of the administrative record.

That determination does not, however, end the matter, because Plaintiff argues that Dr. Sheehan's report is qualifying evidence, and that the court must make a <u>de novo</u> determination in that regard.  (Pl. Supp. 2-3) (citing <u>Krauser v. Astrue</u>, 638 F.3d 1324, 1328 (10th Cir. 2011) ("[W]here the Appeals Council rejects new evidence as non-qualifying and the claimant challenges that ruling on judicial review . . . our general rule of de novo review permits us to resolve the matter and remand if the Appeals Council erroneously rejected the evidence.")).

### B.      Dr. Sheehan's Report Is Not "Qualifying Evidence"

The Tenth Circuit interpreted the regulations, and decided that when the Appeals Council accepts new and material evidence which relates to the period on or before the date of the ALJ decision, that evidence becomes a part of the administrative record which must be considered by a court when reviewing the final decision.  <u>O'Dell v. Shalala</u>, 44 F.3d 855, 858-59 (10th Cir. 1994).  Thereafter, the Tenth Circuit determined that even when the Appeals Council does not specify whether the evidence submitted to it qualifies as new, material, and chronologically relevant evidence, if the Council makes the evidence at issue a part of the administrative record, the court will interpret that action "as an implicit determination" that the evidence is "qualifying new evidence," and will

consider it in reviewing the Commissioner's decision.  Martinez v. Barnhart, 444 F.3d 1201, 1207 (10th Cir. 2006).

The Commissioner correctly notes that in this case the Appeals Council did not make Dr. Sheehan's records a part of the administrative record, and quotes Krauser, 638 F.3d at 1328 for the proposition that where the evidence is not qualifying evidence, the Appeals Council does not consider it, and it will not be considered by the court performing judicial review of the decision.  (Comm'r Supp. 2).  Plaintiff argues that even though the Appeals Council determined otherwise and did not consider the evidence, Dr. Sheehan's report qualifies as new and material evidence related to the period at issue, and therefore, the court should consider that evidence and on that basis determine that remand is necessary for an award of benefits.

As Plaintiff points out, the question of whether additional evidence is qualifying evidence is a question of law subject to the court's de novo review.  Moreover, if the Appeals Council erroneously failed to consider qualifying evidence, remand is necessary for proper consideration.  Threet v. Barnhart, 353 F.3d 1185, 1191 (10th Cir. 2003).  Evidence is new "if it is not duplicative or cumulative," it is material "if there is a reasonable possibility that it would have changed the outcome," and it is chronologically relevant if it relates to the time period on or before the ALJ decision.  Id. (alterations omitted) (internal quotation marks omitted).

Here, there is no question but that Dr. Sheehan's report is new and material.  The report is neither duplicative nor cumulative of record evidence, because it was not

11

produced until almost a year after the ALJ's decision and it was based, at least in part, on additional psychological testing. Moreover, it is material because, if accepted by the ALJ, it could change the outcome of the decision.

The real question for the court is whether Dr. Sheehan's report relates to the time period on or before the ALJ decision. The Appeals Council determined that it does not, and the court agrees. Plaintiff argues that Dr. Sheehan's report relates back to the time period on or before the ALJ decision because Dr. Sheehan indicated "that plaintiff had 'impaired function relating back to that period'" (Pl. Supp. 4) (purportedly quoting R.29); because Dr. Sheehan stated that her opinion applied back to November 2010, id. (without pinpoint citation, but apparently relying on Dr. Sheehan's PRTF (R. 44) and Mental RFC Assessment form (R. 56); and because Dr. Sheehan based her report, in part, on a review of the record medical evidence. (Pl. Supp. 5) (citing R. 11).

Plaintiff's assertion that Dr. Sheehan indicated that Plaintiff had "impaired function relating back to that period" beginning in November 2010 is without merit. (Pl. Supp. 4) (purportedly quoting Dr. Sheehan's report at R. 29). The court cannot find the alleged quote anywhere in Dr. Sheehan's report. It is possible Plaintiff is merely referring to Dr. Sheehan's inclusion of Plaintiff's medical and mental health histories in her report, wherein she noted at page 2 of the report (R. 29) that Plaintiff first began having problems with painful knees in high school, that Plaintiff was diagnosed with Attention Deficit Hyperactivity Disorder (ADHD) as a child, and that in Junior High School Plaintiff began seeing a therapist because she began banging her head against walls and

12

rubbing her face to the point of injury.  If that is the case, it presents two problems.  First, Plaintiff should not refer to Plaintiff's medical history as if Dr. Sheehan's report included the statement "quoted" in Plaintiff's supplemental brief--"impaired function relating back to that period."  Second, and perhaps of greater importance, the onset of medical problems, the diagnosis of ADHD, or the commencement of therapy related to self-abuse does not establish as a fact (or even as an opinion of Dr. Sheehan) that Plaintiff's problems at that time were as severe as they were when Dr. Sheehan prepared her report.

As noted above, Dr. Sheehan stated that her PRTF "Assessment is from: November 2010 to August 2014" (R. 44), and that her Mental RFC Assessment is for "11/2010 to 8/2014."  (R. 56).  However, in neither form did Dr. Sheehan include a statement that Plaintiff's impairments were as severe in November 2010 as they were when she completed the forms in September 2013.  In fact, in each form Dr. Sheehan appeals to her "report of September 2, 2013" (R. 47, 49, 51, 58), and as will be discussed hereinafter, that report relates to Plaintiff's "current" condition and says nothing regarding the severity of her condition in November 2010, or whether that severity had remained constant since then.  Moreover, each form asserts that the assessment will be valid till August 2014, which is eleven months after the form was completed, but neither explains how that conclusion was reached.  That fact brings into question whether Dr. Sheehan actually considered the severity of Plaintiff's impairments over time.

Plaintiff's assertion that Dr. Sheehan based her report on all of the medical evidence in the administrative record, while at least nominally true, is also unavailing.

13

Plaintiff is correct to assert that Dr. Sheehan stated that her conclusions and opinions were based on all of the medical evidence in the administrative record.  (R. 11).  But, Dr. Sheehan did not state that her opinions and conclusions were based <u>solely</u>, or even <u>primarily</u> on the medical evidence.  Rather, on November 25, 2013, more than three months after she evaluated Plaintiff on August 12, 2013, and almost three months after she prepared her report on September 2, 2013, Dr. Sheehan signed a "Supplemental Statement of Psychological Evaluation."  (R. 11).  The only assertion contained in Dr. Sheehan's supplemental statement was that the conclusions and opinions stated in her PRTF and Mental RFC Assessment form "were based on my clinical interview, evaluation, and assessments administered to Ms. Fasse, <u>along with</u> the medical evidence of record."  (R. 11) (underline added).  At best, that is an equivocal, after-the-fact statement that Dr. Sheehan's opinions were based, to some unspecified degree, on the record medical evidence.  Dr. Sheehan's original report tells another story.

Nowhere in the report does it state that the record medical evidence was available or that Dr. Sheehan reviewed the medical evidence.  There is no citation to the medical records or to any of the medical exhibits in Dr. Sheehan's report.  Moreover, while Dr. Sheehan's PRTF and Mental RFC Assessment form, each refer to and rely upon Dr. Sheehan's "report of September 2, 2013" (R. 47, 49, 51, 58), neither of them mentions any of the medical records or information received or reviewed from the medical records.

Although Dr. Sheehan's report contains information relating to Plaintiff's past medical and mental health history and treatment, it states that Plaintiff was referred by her

14

attorney "for an evaluation and testing to determine her <u>current level</u> of psychological

functioning" in a section entitled "Reason for Referral."  (R. 28) (underline added).  The

report notes that "<u>Currently</u>, the claimant receives psychiatric care every 18 weeks from

Dr. Morales at Johnson County Mental Health Center."  (R. 30) (underline added).  In the

"Conclusion" to her report, Dr. Sheehan states that "The problem [Plaintiff] faces <u>at this</u>

<u>time</u> is a complete inability to function during a normal workday in a competitive

environment."  (R. 36) (underline added).  Finally, the "Conclusion" notes that "by

[Plaintiff's] report her emotional distress is <u>worsening with time</u>."  <u>Id.</u> (underline added).

Although an argument can be made (and Plaintiff makes that argument) that Dr.

Sheehan's report and opinions relate back to the period on or before the ALJ decision, Dr.

Sheehan's report reveals that it was an evaluation of Plaintiff's "current" psychological

functioning in August and September of 2013--almost a year after the ALJ's decision.

Because Dr. Sheehan's report and opinions are not chronologically relevant to the period

at issue in the ALJ's decision, in reviewing the final decision of the Commissioner the

court will neither remand for consideration of those records nor consider them itself.

## III.    **Step Three Error**

As Plaintiff argues, the ALJ determined at step three of the sequential evaluation

process that Listings 12.04 and 12.06 are not met or equaled because neither the

"Paragraph B" criteria nor the "Paragraph C" criteria are met.  (Pl. Br. 24-25) (citing R.

75-76).  Plaintiff claims remand is necessary because the ALJ did "not identify the basis

for his Paragraph B or C findings regarding Listings 12.04 and 12.06."  <u>Id.</u> at 25.  The

Commissioner argues that even though the ALJ did not discuss specific evidence in his step three analysis, his discussion elsewhere was sufficient.  (Comm'r Br. 10).

Plaintiff has shown no error in the ALJ's finding.  In her Social Security Brief she did not argue that the ALJ's <u>finding</u> (that the Paragraph B and Paragraph C criteria were not met) was erroneous, and she did not cite to evidence demonstrating that either the Paragraph B or Paragraph C criteria are in fact met.  Rather, she appears to argue that the ALJ applied the incorrect legal standard at step three because he did not identify the basis for his step three findings.  However, as Plaintiff appears to acknowledge, the ALJ based his step three findings on the fact that the evidence does not establish the presence of the Paragraph B or Paragraph C criteria.  (R. 75-76) ("the claimant's mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation," "the evidence fails to establish the presence of the 'paragraph C' criteria").  The court is at a loss to understand how it would be possible for the ALJ to cite to record evidence establishing what the evidence does <u>not</u> show.  If Plaintiff believes the criteria are met, it is her burden to cite the evidence demonstrating that fact, and she has not done so.

In her Reply Brief, Plaintiff appears to assert for the first time that the Paragraph B criteria of the Listings are met.  (Reply 7-8).  But, that argument fails for two reasons.  First, by raising this argument for the first time in her reply brief, Plaintiff has waived it.  <u>See</u>, <u>e.g.</u>, <u>M.D. Mark, Inc. v. Kerr–McGee Corp.</u>, 565 F.3d 753, 768 n. 7 (10th Cir.2009) ("[T]he general rule in this circuit is that a party waives issues and arguments raised for

the first time in a reply brief.").  Second, Plaintiff's entire argument in this regard is based

on Dr. Sheehan's opinion, which does not relate to the time on or before the ALJ decision

in this case.  (Pl. Reply 7-8).  Plaintiff has shown no step three error.

## IV.    The Credibility Determination

Plaintiff appears to recognize that the ALJ determined Plaintiff's allegations of

symptoms resulting from her impairments "are not credible."  (R. 78).  Moreover,

Plaintiff lists ten reasons given by the ALJ for discounting Plaintiff's credibility, and for

most of those reasons she provides a pinpoint citation to the record evidence upon which

the ALJ relied in making that finding.  (Pl. Br. 25-26).

The court's review of an ALJ's credibility determination is deferential, and such

determinations are generally treated as binding on review.  Talley v. Sullivan, 908 F.2d

585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983).

"Credibility determinations are peculiarly the province of the finder of fact" and will not

be overturned when supported by substantial evidence.  Wilson, 602 F.3d at 1144; accord

Hackett, 395 F.3d at 1173.  Therefore, in reviewing the ALJ's credibility determinations,

the court will usually defer to the ALJ on matters involving witness credibility.  Glass v.

Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson v. Sullivan, 987 F.2d

1482, 1490 (10th Cir. 1993) ("deference is not an absolute rule").  "However, '[f]indings

as to credibility should be closely and affirmatively linked to substantial evidence and not

just a conclusion in the guise of findings.'"  Wilson, 602 F.3d at 1144 (quoting Huston v.

Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173.

In listing the ALJ's reasons and citing the evidentiary basis for most of them, Plaintiff tacitly admits that the credibility findings are closely and affirmatively linked to the evidence.  But she argues that the ALJ should have weighed that evidence differently. For example, she points out that many of the ALJ's reasons were based on Dr. Koeneman's report of his examination of Plaintiff, and implies that those reasons should have been afforded less weight because Plaintiff testified that she saw Dr. Koeneman in a children's type of setting, she did not feel that he listened to her, he seemed hurried and did not ask follow-up questions or allow her to explain, and she didn't like him.  While this argument provides a basis for the ALJ to have afforded less weight to those reasons for discounting Plaintiff's credibility, it does not compel that result.  Moreover, it seems anomalous to the court to accord substantial weight to Plaintiff's testimony while deciding whether Plaintiff's testimony is credible.

Plaintiff also argues that her statements to medical providers have not been accurate because as a coping mechanism she tells people what they want to hear.  (Pl. Br. 28).  Then, she asserts that the ALJ should not have used her statements to medical providers to evaluate the credibility of her allegations to the agency.  However, that is all the more reason to find that Plaintiff's allegations are not credible.  If Plaintiff is not accurate in her statements, one needs no further evidence to find that her statements are not credible.

To be sure, Plaintiff points to evidence from which the ALJ might properly have reached a different credibility determination.  But, Plaintiff must demonstrate the error in

18

the ALJ's rationale or finding; the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

Because the ALJ has reached a reasonable credibility determination that is supported by substantial record evidence, the court will not reweigh the evidence and reject that conclusion even though it might have reached a contrary conclusion in the first instance.

## V.      Evaluation of Dr. Morales's Medical Opinion[3]

Plaintiff claims the ALJ erred in according "very limited weight to the opinion of functional capacities presented by Dr. Morales." (R. 83). She first argues that contrary to the ALJ's finding that Dr. Morales's opinion is not supported by the treatment reports, "Dr. Morales' [sic] opinion regarding plaintiff's ability to function outside the home is

---

[3]Plaintiff also argues that the Commissioner erred in rejecting Dr. Sheehan's medical opinion, and she relies extensively on Dr. Sheehan's opinion in arguing that Dr. Morales's opinion is worthy of greater weight. As the court found above, Dr. Sheehan's opinion is not chronologically relevant to the time period on or before the ALJ decision, and the court may not rely upon it in reviewing the decision at issue here.

wholly consistent with and supported by the treatment records from JCMHC [(Johnson

County Mental Health Center)]."  (Pl. Br. 31).  Plaintiff acknowledges in this regard that,

as the ALJ discussed, Dr. Morales assessed Global Assessment of Functioning[4] (GAF)

scores of 60 for Plaintiff, indicating moderate symptoms or moderate difficulty, but

argues that GAF scores are not determinative of mental disability, that different mental

healthcare providers define the term "moderate" differently, and that the other record

evidence "fully support[s] and [is] wholly consistent with the limitations identified by Dr.

Morales."  (Pl. Br. 32).

### A.    The Treating Physician Rule

A treating physician's opinion about the nature and severity of a claimant's

impairments should be given controlling weight by the Commissioner if it is well

supported by clinical and laboratory diagnostic techniques and if it is not inconsistent

with other substantial evidence in the record.  Watkins v. Barnhart, 350 F.3d 1297, 1300-

---

[4]A Global Assessment of Functioning, or GAF, score is a subjective determination
which represents "the clinician's judgment of the individual's overall level of
functioning."  Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental
Disorders (DSM-IV-TR) 34 (4th ed. text revision 2000).  The GAF Scale ranges from 100
(superior functioning) to 1 (persistent danger of severely hurting self or others, persistent
inability to maintain minimal personal hygiene, or serious suicidal act with clear
expectation of death).  Id. at 34.  GAF is a classification system providing objective
evidence of a degree of mental impairment.  Birnell v. Apfel, 45 F. Supp. 2d 826, 835-36
(D. Kan. 1999) (citing Schmidt v. Callahan, 995 F. Supp. 869, 886, n.13 (N.D. Ill. 1998)).

GAF scores in the range of 51-60 indicate "**Moderate symptoms . . . OR
moderate difficulty in social, occupational, or school functioning.**"  DSM-IV-TR, at
34 (emphasis in original).

01 (10th Cir. 2003); 20 C.F.R. § 416.927(c)(2).  When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician's opinion.  Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).

A treating source opinion which is not entitled to controlling weight is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927."  Watkins, 350 F.3d at 1300.  Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  Id. at 1301; 20 C.F.R. § 416.927(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).  However, the court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"  Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins, 350 F.3d at 1300).

After considering the above factors, the ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion.  If the ALJ rejects the opinion completely, he must give specific, legitimate reasons for doing so.  <u>Watkins</u>, 350 F.3d at 1301.

### B.      The ALJ's Analysis

Dr. Morales provided a Medical Source Statement listing fourteen "mental abilities critical for performing unskilled work."  (R. 792-94).  The form provided five check-boxes for each ability in which the physician indicated whether that ability was "unlimited," "good," "fair," or "poor."  <u>Id.</u>  The form defined "[u]nlimited" as no loss of ability in that activity; "[g]ood" as "[s]ome loss of ability . . . but still capable of performing it in regular, competitive employment;" "[f]air" as "[s]ubstantial loss of ability . . . at, best could do so only in a sheltered work setting;" and "[p]oor/[n]one" as "[c]omplete loss of ability . . . could do so only to meet the basic needs at home."  (R. 792).  Of the fourteen listed abilities, Dr. Morales opined that Plaintiff had "good" ability in three abilities, "fair" ability in seven abilities, and "poor/none" ability in four abilities. (R. 792-93).  The ALJ summarized Dr. Morales's medical source statement and noted his finding with regard to each mental ability.  (R. 80).  He also recognized that Dr. Morales had provided a lengthy letter summarizing Plaintiff's diagnoses and treatment, and noted that in the letter Dr. Morales reported GAF scores of 60 and repeatedly described moderate impairment when performing Plaintiff's mental status assessments.  (R. 80) (citing Ex.23F (R. 795-811)).

The ALJ concluded his evaluation of Dr. Morales's medical source statement and

letter:

> Moderate limitation does not comport with the degree of severity assessed
> by Dr. Morales in the Medical Source Statement found in Ex. 22F.
> However, a GAF of 60 is consistent with the totality of the evidence in this
> matter, including treatment records, medical history, objective testing, types
> of treatment and lack thereof, lay evidence, daily living activities,
> inconsistent statements from the claimant, and reports from evaluating and
> reviewing medical sources.  According to the narrative from Dr. Morales
> and therapy records, the claimant has functioned well in 2011, attending
> college, helping a sister after surgery, hanging out with her sister and her
> sister's friends, planning her cousin's baby shower, looking forward to
> living on her own during the summer with her parents away, interested in
> working as a photographer for a music magazine, getting her dog registered
> as a therapy dog in order to work with children and elderly, planning to
> establish her own residence for the fall, etc.  In January 2011, the therapist
> noted that the claimant said she "is kinda sick of being at home and being
> bored and is looking forward to the start of school".  Ex. 16F/23.  The
> claimant discontinued therapy and was too busy to keep appointments or
> return therapist's calls.  She returned to treatment due to anxiety over her
> cat's death.  In December 2011 and 2012, mental status assessments showed
> only mild impairment.  She was babysitting, getting out with friends,
> interested in acquiring job skills and experience, and felt able to do
> volunteer work in the community.  The records show that the claimant has
> good response to medications and therapy without adverse side effects.  See
> also Ex. 6F, 16F, 21F, 24F, 2F, 8F.

(R. 80-81).

The ALJ explained the weight given to Dr. Morales's opinions, and the reasons for

that weight.  He stated that he had:

> accorded significant evidentiary weight to the actual treatment records from
> the Johnson County Mental Health Center, but very limited weight to the
> opinion of functional capacities presented by Dr. Morales, which was
> clearly prepared for the litigation herein and not supported by the treatment
> reports or the remainder of medical evidence.

(R. 83).

### C.       Discussion

In according "very limited weight" to Dr. Morales's opinion, the ALJ essentially rejected the opinion.  Therefore, the question before the court is whether he gave "specific, legitimate reasons for doing so."

The ALJ's summary of Dr. Morales's medical source statement and narrative letter is a fair summary.  Moreover, when one remembers that Dr. Morales practiced at the Johnson County Mental Health Center, it becomes apparent from the ALJ's distinction between according "significant evidentiary weight to the actual treatment records from the Johnson County Mental Health Center, but very limited weight to the opinion of functional capacities presented by Dr. Morales," that the ALJ rejected the limited functional capacities opined by Dr. Morales, but accepted the moderate limitations assessed in Dr. Morales's letter and supported by the JCMHC treatment records.  The court's review of this evidence agrees with the ALJ's analysis.

Plaintiff's argument regarding GAF is likewise unavailing.  As Plaintiff's argument suggests, the agency decided not to discuss the GAF scale in the introductory paragraphs of the Listing of Mental Impairments, in part, because the GAF scale does not have a direct correlation to the severity requirements in the mental disorders listing.  65 Fed. Reg. 50,746, 50,765 (Aug. 1, 2000).  Nevertheless, at the same time, the agency acknowledged in that regard "that an individual's medical source 'normally can provide valuable additional functional information.'"  Id. (quoting 20 C.F.R., Pt. 404, Subpt. P,

App. 1 §12.00D.  Moreover, the agency does not forbid ALJs from evaluating and discussing GAF scores that are in the record evidence.  The ALJ's discussion regarding a GAF score of 60 is correct, and as he noted it is consistent with Dr. Morales's repeated use of "moderate" in describing Plaintiff's impairments.  Plaintiff's argument that the term "moderate" is used differently by the "providers at JCMHC or the Commissioner" is irrelevant here because as the ALJ noted Dr. Morales both assigned a GAF score of 60 and used the term "moderate" in her letter, suggesting that her understanding of the GAF score is consistent with that of the ALJ..  Since the GAF scale provides objective evidence of the severity of a mental impairment, the ALJ's discussion in that regard is a reasonable analysis, and Plaintiff has not demonstrated that the ALJ's understanding cannot be supported by the record evidence.

Because Plaintiff has shown no error in the ALJ's evaluation of Dr. Morales's opinion, her final claim that the ALJ's RFC assessment is erroneous cannot succeed because it is based upon the alleged error in evaluating Dr. Morales's opinion.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 26th  day of June 2015, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**

25